660 A.2d 412

**Joann URQUHART et al.**

v.

**Angela C. SIMMONS et al.**

**No. 108, Sept. Term, 1994.**

Court of Appeals of Maryland.

June 26, 1995.

Kenneth Armstrong (Maura J. Condon, Armstrong, Donohue & Ceppos, all on brief), Rockville, for petitioners.

Jonathan S. Beiser (Robert G. Samet, Ashcraft & Gerel, all on brief), Rockville, for respondents.

Argued before MURPHY, C.J., ELDRIDGE, CHASANOW, KARWACKI, BELL, RAKER, JJ., and JOHN F. McAULIFFE, Judge (retired) Specially Assigned.

CHASANOW, Judge.

We are called upon in this case to determine the scope of a trial court's authority to transfer a case based on the doctrine of *forum non conveniens* as codified in Maryland Rule 2–327(c). For the reasons discussed below, we hold that a trial court may not *sua sponte* transfer a case on the grounds of *forum non conveniens.* Nevertheless, because the defendants in the instant case adequately raised that issue by filing their motion to dismiss or to transfer, we hold that the trial judge did not abuse his discretion in transferring this case to Montgomery County.

## I.

This appeal arises out of a tort action filed by Angela Simmons, and her children, Sharon, David, and Mark Simmons, in the Circuit Court for Prince George's County against Joann Urquhart, M.D., William Tullner, M.D.,[1] and Maryland

---

1. Dr. Tullner was dismissed from this case prior to trial.

Cardiology Associates, P.A. (MCA) for wrongful death and survival arising out of the death of Anthony Simmons, the husband and father of the plaintiffs.

Mr. Simmons visited MCA's office on February 25, 1987 complaining of chest pains.[2] On March 4, 1987, Mr. Simmons was admitted to Washington Adventist Hospital in Montgomery County for a cardiac catheterization to determine the cause of his chest pains. Dr. Tullner performed the cardiac catheterization on March 5, 1987 and the results of the test showed that there were no significant arterial blockages.

While Mr. Simmons was still in the hospital, Dr. Tullner left town to attend a medical convention and Dr. Urquhart took over the care of Mr. Simmons. Dr. Urquhart discharged Mr. Simmons from the hospital on the evening of March 9, 1987. Prior to discharging Mr. Simmons, Dr. Urquhart examined his chart, examined his heart and lungs, provided him with routine discharge instructions, and prescribed several medications. Dr. Urquhart did not specifically inform Mr. Simmons of the potential complications from the cardiac catheterization, such as pain and fever, which are associated with a potentially fatal condition known as pulmonary embolization. Dr. Urquhart did, however, advise Mr. Simmons to call her if he experienced any problems. On March 13, 1987, Mr. Simmons died of a pulmonary embolism at Greater Laurel Beltsville Hospital in Prince George's County.

Subsequently, plaintiffs filed a wrongful death and survival action with the Health Claims Arbitration Office. Prior to proceeding with the claim, the parties waived arbitration and filed a complaint for wrongful death and survival in the Circuit Court for Prince George's County. Soon after the lawsuit was filed, the defendants filed a Motion to Dismiss, or, in the Alternative, Motion to Transfer to the Circuit Court for

---

2. At the time of the events in the instant case, MCA maintained three offices. Two offices were located in Montgomery County in Bethesda and Silver Spring and one office was located in Laurel in Prince George's County. Dr. Tullner and Dr. Urquhart had privileges at hospitals located in both Montgomery and Prince George's Counties.

Montgomery County, requesting that the case be dismissed or in the alternative transferred to Montgomery County. The defendants cited Maryland Code (1974, 1995 Repl.Vol.), Courts and Judicial Proceedings Article, §§ 6–201 and 6–202 in support of their motion.[3] Plaintiffs filed an answer to the motion in opposition to defendants' request to dismiss or to transfer the case. A hearing was held before Judge Steven I. Platt on defendants' motion to dismiss or to transfer.

Defendants claimed that any "contacts" arising in this case occurred in Montgomery County and that viewing the "totality of the circumstances" the case should be transferred to Montgomery County for trial. Defendants' counsel noted that all three physicians associated with MCA resided in Montgomery County;[4] the complaint listed all three physicians with business addresses in Montgomery County; the cardiac catheterization took place at Washington Adventist Hospital in Montgomery County; and relevant telephone conversations between Mr. Simmons and Dr. Urquhart took place through her Montgomery County office. In opposition to defendants' motion, plaintiffs' counsel argued that although there were many contacts with Montgomery County, Prince George's County was a proper venue because MCA carried on a regular business in its Laurel office in Prince George's County and because Mr. Simmons died at Greater Laurel Beltsville Hospital in Prince George's County.

---

**3.** Unless otherwise specified, all references to §§ 6–201 and 6–202 are to Maryland Code (1974, 1995 Repl.Vol.), Courts and Judicial Proceedings Article. Section 6–201 provides in pertinent part:

"(a) *Civil actions.*—Subject to the provisions of §§ 6–202 and 6–203 and unless otherwise provided by law, a civil action shall be brought in a county where the defendant resides, carries on a regular business, is employed, or habitually engages in a vocation. In addition, a corporation also may be sued where it maintains its principal offices in the State."

Section 6–202(8) provides that a tort action may also be filed "[w]here the cause of action arose."

**4.** Although Dr. Urquhart was residing in the District of Columbia at the time the cause of action in the instant case arose, she subsequently moved to Montgomery County.

At the hearing on defendants' motion, Judge Platt asked defense counsel if his "response to . . . [plaintiffs' counsel's] argument that he's entitled to proceed in Prince George's County . . . is essentially a *forum non conveniens* argument." Defense counsel responded that "I think you could probably draw that analogy. I think there has to be some discretion on your part in evaluating the venue in this case. . . ." At the close of the hearing on the motion to dismiss or to transfer, the judge transferred the case to the Circuit Court for Montgomery County. In so doing, the court stated:

> "The Court has reviewed 6–201 and 6–202 [Md.Code (1974, 1995 Repl.Vol.), Courts and Judicial Proceedings Article] as well as heard the arguments of counsel and read the memorandums and as well as the exhibits and the Court feels that the motion for—obviously I'm not going to dismiss the case, but I do believe it should be transferred to Montgomery County and I will sign an order to that effect."

The case was transferred to the Circuit Court for Montgomery County and the trial was held before Judge J. James McKenna. At trial, the respective parties recited contradictory versions of the events leading up to the death of Mr. Simmons.

According to the testimony of Mrs. Simmons, Mr. Simmons repeatedly called MCA's office in an attempt to reach Dr. Urquhart. Notes taken by Sharon Siegler, MCA's Bethesda office manager, on March 10, 1987 state that Mr. Simmons telephoned the MCA office and told her that he was experiencing some pain in the left side of his stomach and had a fever. After another telephone call from Mr. Simmons, Ms. Siegler wrote another note which stated "hematoma from cath." and "fever" and "pain." Plaintiffs claim that despite these repeated attempts to reach Dr. Urquhart, she never returned Mr. Simmons's calls until March 12, 1987.

To further support plaintiffs' claim that Mr. Simmons could not reach Dr. Urquhart, Dr. Wayman W. Cheetham, M.D., Mr. Simmons's diabetes physician, testified that Mr. Simmons called him about the symptoms he was experiencing following

the cardiac catheterization and informed Dr. Cheetham that he was unable to reach his cardiologist. According to Dr. Cheetham, he told Mr. Simmons that he should continue to try and reach his cardiologist. Dr. Cheetham also testified that Mr. Simmons called him at least one more time after that conversation and told him that he was still unable to reach his cardiologist. Dr. Cheetham told Mr. Simmons that if he could not reach his cardiologist he needed to "be seen by someone" and that he should go to the emergency room because his symptoms may indicate a potential life threatening complication. Mr. Simmons never went to the emergency room despite the warning from Dr. Cheetham that his life could be in danger.

According to the testimony of Ms. Siegler and Dr. Urquhart they repeatedly urged Mr. Simmons to seek medical attention and he refused. Dr. Urquhart testified that she spoke with Mr. Simmons on the telephone on the evenings of March 11 and March 12, 1987. Dr. Urquhart testified then when she called Mr. Simmons from her home on the evening of March 11 he described his symptoms and she asked him to feel for his femoral artery. Mr. Simmons informed her that it hurt him when he felt it. She stated that she told Mr. Simmons that he may have a hematoma and that "he must go to the emergency room at Washington Adventist Hospital." Mr. Simmons refused to go to the emergency room despite Dr. Urquhart's warning that he had "a life-threatening problem." Dr. Urquhart told Mr. Simmons that if he did not go to the emergency room then he "must come for [his] visit tomorrow" at the Bethesda office. According to Dr. Urquhart, Mr. Simmons agreed to come to MCA's Bethesda office but when he did not arrive for his appointment on the morning of March 12, an office staff member called him and he said "he didn't come because he felt better."

The respective parties also had contradictory versions of a telephone conversation that took place between Mr. Simmons and Dr. Urquhart on March 12, 1987, the evening before Mr. Simmons's death. According to Mrs. Simmons's testimony, she listened to that conversation on an extension phone. She

testified that after Mr. Simmons told Dr. Urquhart that his legs hurt, that he was limping and sore, and that his "groin was very swollen and hot to the touch," Dr. Urquhart responded, "it is normal to have discomfort after a procedure like you had . . . [t]he reason you didn't feel any pain in the hospital is because we had you so heavily sedated to keep your blood pressure under control." Mrs. Simmons further testified that after Mr. Simmons told Dr. Urquhart that Dr. Cheetham told him it could be a blood clot or blood poisoning, Dr. Urquhart told Mr. Simmons that "it wasn't a blood clot or blood poisoning because if [you] had a blood clot or blood poisoning, they wouldn't have let [you] leave the hospital." At that point Mrs. Simmons testified that she interrupted the conversation and said "[w]hat about the pain in your leg and your knee?" Mr. Simmons then responded, "[t]hat's all right . . . I'll just wait till Monday and see Dr. Tullner." Mrs. Simmons stated that she hung up the phone and Mr. Simmons went to bed after the phone call.

According to Dr. Urquhart, however, Mr. Simmons informed her that his femoral artery "hurt when he pressed" it and she told him that he "must go to the emergency room at Washington Adventist" Hospital. Dr. Urquhart further testified that after Mr. Simmons refused to go to the emergency room, she told Mr. Simmons that "he must see Dr. Tullner the first thing in the morning in his Laurel office" and Mr. Simmons agreed. Mr. Simmons never came to this appointment, as his death occurred early the next morning.

After the evidence was presented at trial, the plaintiffs submitted a jury instruction regarding the doctrine of last clear chance, arguing that if Dr. Urquhart had advised Mr. Simmons on March 12, 1987 that his symptoms were life-threatening, it would have been a new opportunity to avoid her original negligence. Thus, plaintiffs argued that because Dr. Urquhart had a last clear chance to avoid her negligence but did not do so, the jury should be instructed that even if it found Mr. Simmons contributorily negligent, if it found that Dr. Urquhart had the last clear chance to avoid her negligence

and did not do so, the jury could still find her liable. The trial court denied plaintiffs' request stating that:

"[T]here is a good deal of evidence that shows that the deceased, had he gone to the hospital, . . . that he still could have avoided this and he still would have lived, but he didn't.

He did not go to the hospital despite the fact that his wife told him to do it. . . . Dr. Cheetham told him to go to the hospital. . . .

But, he didn't do anything. . . . So, in my view, last clear chance simply would not apply."

The jury returned a verdict of negligence on the part of Dr. Urquhart and contributory negligence on the part of Mr. Simmons and judgment was entered in favor of defendants.

Plaintiffs appealed to the Court of Special Appeals which reversed the judgment of the circuit court and held that "the Circuit Court for Prince George's County abused its discretion in transferring the action" to Montgomery County. *Simmons v. Urquhart*, 101 Md.App. 85, 107, 643 A.2d 487, 498 (1994). The court ordered that the case be transferred to Prince George's County for a new trial. *Simmons*, 101 Md.App. at 113, 643 A.2d at 500. Although the Court of Special Appeals did not decide whether it was error for the trial court to refuse to instruct the jury on last clear chance, it noted that the trial court's reasoning for refusing to grant the instruction was inappropriate. *See Simmons*, 101 Md.App. at 111–12, 643 A.2d at 500. We granted a writ of certiorari to determine whether this case was improperly transferred to Montgomery County.

II.

In holding that the trial court abused its discretion in transferring the instant action to Montgomery County, the Court of Special Appeals first determined that a trial court possesses the authority to *sua sponte* transfer an action under Md.Rule 2–327(c). The Court of Special Appeals held that although defendants filed a motion to dismiss or to transfer

this action, they relied solely on the improper venue statute contained in §§ 6–201 and 6–202, and not upon the doctrine of *forum non conveniens* contained in Md.Rule 2–327(c).[5]  Thus, the court determined that the defendants "did not raise sufficiently the issue of *forum non conveniens* as a grounds for transfer." *Simmons*, 101 Md.App. at 100, 643 A.2d at 494. The court noted, however, that the trial court *sua sponte* transferred the instant case on the grounds of *forum non conveniens* and held that a trial court has the authority to do so. *Id.*  We disagree and hold that a trial court may not transfer a case on the grounds of *forum non conveniens* unless a party has first made a motion requesting that the case be transferred.

■ Maryland Rule 2–327(c) permits a trial court to transfer an action on the grounds of *forum non conveniens* upon motion of any party when it appears that it would be more convenient for the parties and witnesses to have the case heard in another appropriate venue and the interests of justice would be served. *See* Md.Rule 2–327(c).  This rule permits an action to be transferred to another appropriate venue even though a plaintiff's choice of venue is proper.  Md.Rule 2–327(c) provides:

> "(c) **Convenience of the Parties and Witnesses.**—On motion of any party, the court may transfer any action to any other circuit court where the action might have been brought if the transfer is for the convenience of the parties and witnesses and serves the interests of justice."

In reaching its determination that a trial court has the authority to *sua sponte* transfer an action on the grounds of *forum non conveniens*, the Court of Special Appeals relied on several sources.  One of those sources was 28 U.S.C. § 1404(a) (1982), from which Md.Rule 2–327(c) is derived.  *See* Md.Rule

---

**5.** We note that the parties do not dispute that either Prince George's County or Montgomery County were proper venues for the instant action because the defendants "carrie[d] on regular business" in both of those counties. *See* Maryland Code (1974, 1995 Repl.Vol.), Courts and Judicial Proceedings Article, § 6–201(a).

2–327(c); *see also* Paul V. Niemeyer and Linda M. Schuett, *Maryland Rules Commentary*, at 215 (2d ed. 1992) (noting that "[Md.Rule § 2–327(c)] is derived from 28 U.S.C. § 1404(a)"). 28 U.S.C. § 1404(a) provides:

> "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

It has been held that federal courts have wide discretion in transferring an action under 28 U.S.C. § 1404(a) on their own initiative. *See, e.g., Wash. Pub. Util. Group v. U.S. Dist. Court,* 843 F.2d 319, 326 (9th Cir.1987) (noting in dicta that "section 1404(a) does not expressly require that a formal motion be made before the court can decide that a change of venue is appropriate"); *Clisham Management v. American Steel Bldg. Co.,* 792 F.Supp. 150, 157 (D.Conn.1992) (noting that "[a] transfer of venue for the convenience of the parties and in the interest of justice may be made upon motion by either of the parties *or* by the court *sua sponte* ") (emphasis in original); *Kirby v. Mercury Sav. and Loan Ass'n,* 755 F.Supp. 445, 448 (D.D.C.1990) (holding that a federal court "has authority to act *sua sponte* to transfer a case to another federal district court pursuant to 1404(a)").

The Court of Special Appeals emphasized the fact that because federal courts are permitted to act *sua sponte* in transferring an action under 28 U.S.C. § 1404(a) and because Md.Rule 2–327(c) was derived from that statute, it follows that a Maryland trial court should have the authority to transfer an action on the grounds of *forum non conveniens* on its own initiative. Notwithstanding the fact that Md.Rule 2–327(c) was derived from 28 U.S.C. § 1404(a), an examination of the language of the two statutes reveals a significant difference between 28 U.S.C. § 1404(a) and Md.Rule 2–327(c). While 28 U.S.C. § 1404(a) contains no language requiring a party to make a motion to transfer prior to the action being transferred to another forum, Md.Rule 2–327(c) conspicuously added the language "[o]n motion of any party," while adopting a virtually identical version of 28 U.S.C. § 1404(a) in all other

respects. *Compare* 28 U.S.C. § 1404(a) *with* Md.Rule 2–327(c). Thus, the federal cases relying on the broad language of 28 U.S.C. § 1404(a) in concluding that a federal court may *sua sponte* transfer an action on the grounds of *forum non conveniens* are not particularly persuasive because Md.Rule 2–327(c) does not have similarly broad language. If Maryland wished to permit a trial court to act *sua sponte* in transferring an action, Md.Rule 2–327(c) could have adopted the language of 28 U.S.C. § 1404(a) verbatim and the federal case law interpreting 28 U.S.C. § 1404(a) to permit a trial court to act on its own initiative in transferring an action would be highly persuasive. Given that this Court adopted the recommendation of the Rules Committee to add the "[o]n motion of any party" language to the Maryland rule, however, that addition indicates that a motion by a party requesting a transfer is required prior to a trial court transferring an action under Md.Rule 2–327(c).

The Court of Special Appeals also noted that because sections (a), (b) and (d) of Md.Rule 2–327 permit a trial court to act on its own initiative in transferring an action, it follows that section (c) also permits a trial court to act on its own initiative. *See Simmons,* 101 Md.App. at 103 n. 7, 643 A.2d at 496 n. 7. Nevertheless, we find that the opposite inference is warranted. Because sections (a), (b) and (d) of Md.Rule 2–327 do not contain language requiring a party to make a motion prior to an action being transferred, had the Rules Committee wished to permit a trial court to transfer an action on its own initiative under section (c), it could have recommended that this Court omit the "[o]n motion of any party" language from that section as it had done in the other three sections of that rule. *See* Md.Rule 2–327(c). Because the "[o]n motion of any party" language was specifically added only to section (c), it indicates that a party must make a motion to transfer prior to a trial court's transferring an action pursuant to that section.

The intermediate appellate court also found that this Court's decision in *Goins v. State,* 293 Md. 97, 442 A.2d 550 (1982) supports a trial court's authority to *sua sponte* transfer a case on the grounds of *forum non conveniens. See Sim-*

*mons,* 101 Md.App. at 101, 643 A.2d at 495. In that case, a criminal defendant appealed the trial court's decision to postpone the trial date beyond the 180–day limitation period imposed by statute, arguing that the trial court could not postpone the trial date absent a motion by a party to do so. We noted that "[a] rule authorizing a litigant to file a procedural motion for this purpose in one respect or another should not be construed to prohibit the court from accomplishing the same object sua sponte unless such construction is compelled by clear language." *Goins,* 293 Md. at 111, 442 A.2d at 557. Thus, we concluded that the "mere use of the word 'party' in § 591 and Rule 746 does not preclude a motion by the court sua sponte," and held that the trial court's *sua sponte* decision to extend the trial date beyond the 180–day period was not in error. *Goins,* 293 Md. at 110–11, 442 A.2d at 557.

In the instant case, however, it is not merely the use of the word "party" that indicates that a court is precluded from *sua sponte* transferring an action. The Rules Committee specifically recommended to this Court that the "[o]n motion of any party" language be added to Md.Rule 2–327(c) even though the rule was derived from 28 U.S.C. § 1404(a) which does not contain such restrictive language. Thus, the decision in *Goins* is not particularly persuasive in the instant case given that the clear language of Md.Rule 2–327(c) requires a motion by a party prior to an action being transferred to another forum.

In a post-*Goins* decision addressing a trial court's authority to act *sua sponte,* we held that a trial court lacks the authority to *sua sponte* grant a motion for summary judgment under Md.Rule 2–501. *See Hartford Ins. Co. v. Manor Inn,* 335 Md. 135, 642 A.2d 219 (1994). In *Hartford Ins.,* Hartford Insurance Company filed suit against the State and Manor Inn of Bethesda, Inc. to recover costs it paid out to its insured pursuant to an insurance policy. The State moved for summary judgment as to Hartford Insurance's complaint against the State. Manor Inn did not seek summary judgment on the claim filed against it. The trial court granted summary judgment in favor of both the State *and* Manor Inn even though there was a different theory of liability against Manor

Inn and Manor Inn never filed a motion for summary judgment. We noted that Md.Rule 2–501(e) states that " 'the court shall enter judgment in favor of or against *the moving party* if the motion and response show that there is no genuine dispute as to any material fact and the party in whose favor judgment is entered is entitled to judgment as a matter of law.' " *Hartford Ins.,* 335 Md. at 145, 642 A.2d at 224 (quoting Md.Rule 2–501(e)) (emphasis added in *Hartford*). We held that "it is clear that [Md.Rule 2–501] does not contemplate . . . a court's acting entirely on its own motion . . . where none of the parties has moved for summary judgment." *Hartford Ins.,* 335 Md. at 146, 642 A.2d at 224. Similarly, because Md.Rule 2–327(c) specifically provides that upon "motion of any party" a court may transfer an action, the rule also does not contemplate a court acting on its own motion when the parties have not requested that the action be transferred.

Finally, although federal courts have interpreted 28 U.S.C. § 1404(a) to permit a trial court to *sua sponte* transfer an action on the grounds of *forum non conveniens,* our determination that Md.Rule 2–327(c) does not permit an action to be transferred absent a motion by a party is in line with other state courts which have held that a trial court does not have the authority to transfer an action absent a motion by a party requesting a transfer. In *Stevens v. Blevins,* 890 P.2d 936 (Okla.1995), the Supreme Court of Oklahoma held that a trial court does not have the authority to *sua sponte* transfer an action on the grounds of *forum non conveniens.* 890 P.2d at 940. In *Stevens,* a tort action was filed in Oklahoma County. The parties neither disputed that Oklahoma County was a proper venue for the action nor raised the issue that another forum would be more convenient. Nevertheless, the trial court *sua sponte* ordered that the case be transferred to Kingfisher County. *See Stevens,* 890 P.2d at 937. In rejecting the argument that the trial court's *sua sponte* transfer was proper under common law intrastate *forum non conveniens,* the court held that "where venue is properly laid . . . a party must object to the venue and move for a change of venue

*before* the trial court has any authority under the common law to apply intrastate *forum non conveniens* and to transfer a case." *Stevens,* 890 P.2d at 939–40 (emphasis in original). *See also VSL v. Dunes Hotels and Casinos, Inc.,* 70 N.Y.2d 948, 524 N.Y.S.2d 671, 671, 519 N.E.2d 617, 617 (1988) (holding that "a court does not have the authority to invoke the doctrine [of forum non conveniens] on its own motion"); *Penox Technologies v. Foster Medical,* 376 Pa.Super. 450, 546 A.2d 114, 116 (1988) (holding that a court may not transfer a case from a proper venue absent a motion by a party); *Robertson v. Gregory,* 663 S.W.2d 4, 5 (Tex.Ct.App.1983) (noting that courts are without authority to change venue in civil suits on their own motion).

Thus, we hold that because the express language of Md. Rule 2–327(c) requires that a party first make a motion prior to a case being transferred on the grounds of *forum non conveniens,* a trial court may not act on its own initiative in transferring a case under that rule.

### III.

In the instant case, as we noted above, there was a motion filed by the defendants to transfer this action to Montgomery County. Although defendants relied on §§ 6–201 and 6–202, rather than Md.Rule 2–327(c) in their motion to transfer, we find that defendants' motion to transfer was sufficient to permit a transfer for *forum non conveniens* and thus, the trial court did not *sua sponte* transfer this action under Md.Rule 2–327(c).

In his argument to have the instant case transferred to Montgomery County, defense counsel outlined all of the contacts with Montgomery County such as the telephone calls that took place between Dr. Urquhart and Mr. Simmons from Dr. Urquhart's office in Montgomery County, the telephone calls between Dr. Cheetham and Mr. Simmons from Dr. Cheetham's Montgomery County office, the fact that the cardiac catheterization took place in Montgomery County, and the fact that the defendants all reside in Montgomery County.

Defense counsel thus based his argument to transfer on the fact that "any contacts ... are clearly established as contacts that took place in Montgomery County." Moreover, in responding to the judge's question concerning the venue statute which states that so long as the defendants carry on a regular business in Prince George's County that venue is proper there, defense counsel replied that "[m]y position is that when you look at the totality of the circumstances here these physicians practiced at every hospital in Montgomery County and they had one contact with Greater Laurel Beltsville [the hospital where Mr. Simmons died]." In response to defense counsel's argument, the trial judge inquired as to whether counsel was "essentially [making] a *forum non conveniens* argument." Defense counsel's reply was "I think you could probably draw that analogy. I think that there has to be some discretion on your part in evaluating the venue in this case...." Defense counsel further stated that "I don't think you can draw just a straight line and say that it's okay to having it here as opposed to having it in Montgomery County. When you look at all the circumstances this is clearly a contact case with Montgomery County." Additionally, when asked by the judge about what relief he was requesting in his motion, defense counsel stated "[h]owever you want to phrase it, Your Honor, I want it in Montgomery County."

In responding to the *forum non conveniens* argument, plaintiff's counsel noted that the issue should not be addressed because defendants "have not raised that doctrine [and] I have not briefed it, but I would indicate that that doctrine should not be literally applied." [6] Plaintiff's counsel noted that there are no "major differences" between the two counties and "Washington Adventist Hospital is probably closer in distance timewise to Upper Marlboro than it is to Rockville." Additionally, all the defendants had privileges at Greater Laurel Beltsville Hospital in Prince George's County. Thus, he argued that venue is proper in Prince George's County and

---

6. Plaintiff's counsel did not request a continuance to allow the parties to brief the issue of *forum non conveniens*.

plaintiffs had a right to choose that forum. From the motion to dismiss or to transfer and from counsel's remarks, it appears that he wanted the judge to consider any appropriate basis in determining that the case should be transferred to Montgomery County. Thus, we find that the trial court did not transfer this action *sua sponte* but transferred the action only after defendants made a motion to transfer, albeit a motion lacking in proper citation of authority. We must now determine whether the trial court properly transferred this action to Montgomery County under Md.Rule 2–327(c).

We have held that "[w]hen determining whether a transfer of the action for the convenience of the parties and witnesses is in the interest of justice, a court is vested with wide discretion." *Odenton Development v. Lamy,* 320 Md. 33, 40, 575 A.2d 1235, 1238 (1990); *see also Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419, 436 (1981) (noting that "[t]he *forum non conveniens* determination is committed to the sound discretion of the trial court ... [and] may be reversed only when there has been a clear abuse of discretion"). In the instant case, the Court of Special Appeals held that this discretion was abused. We disagree.

The intermediate appellate court relied on our opinion in *Odenton Development* to reach its conclusion that the trial court abused its discretion in transferring this case to Montgomery County. In *Odenton Development,* we adopted a balancing test to determine whether a transfer is proper under Md.Rule 2–327(c). In ascertaining whether to transfer an action a trial court " 'must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of "the interest of justice." ' " *Odenton Development,* 320 Md. at 40, 575 A.2d at 1238 (quoting *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 30, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22, 32 (1988)). In *Odenton Development,* we also stated that it "is the moving party who has the burden of proving that the interests of

justice would be best served by transferring the action. 320 Md. at 40, 575 A.2d at 1238.[7]

Balancing the convenience of the parties and witnesses in the instant case along with the interests of justice, the trial court was within its discretion in determining that the balance weighs strongly in favor of transferring the action to Montgomery County. Based on the arguments presented at the hearing on defendants' motion to dismiss or to transfer, there was ample evidence for the trial court to determine that it would be more convenient for the parties and witnesses to have this action tried in Montgomery County and that transferring the case would serve the interests of justice. First, it was established that each of the individual defendants was a resident of Montgomery County. Second, the relevant medical care and treatment received by Mr. Simmons took place in Montgomery County, including the cardiac catheterization performed at Washington Adventist Hospital.

Third, the telephone conversations between Mr. Simmons and Dr. Urquhart and between Mr. Simmons and MCA's office staff took place through MCA's office in Montgomery County. Also, the calls between Mr. Simmons and Dr. Cheetham took place through Dr. Cheetham's office in Montgomery County.[8] Thus, the only contact that Prince George's County

---

7. We note that the Court of Special Appeals adopted from federal case law the additional factor of "proper regard for the plaintiff's choice of forum." *See Simmons v. Urquhart,* 101 Md.App. 85, 106, 643 A.2d 487, 497 (1994). This factor, however, is not a separate element in the analysis to be employed under *Odenton Development v. Lamy,* 320 Md. 33, 575 A.2d 1235 (1990) to determine if an action should be transferred under Md.Rule 2–327(c). Rather, it is the reason why "a motion to transfer [from the forum chosen by the plaintiff] should be granted only when the balance weighs strongly in favor of the moving party." *See Odenton Development,* 320 Md. at 40, 575 A.2d at 1238.

8. The Court of Special Appeals indicates that the telephone calls Mr. Simmons made to the various doctors' offices in Montgomery County were placed from Mr. Simmons's home in Prince George's County. *See Simmons v. Urquhart,* 101 Md.App. at 106 n. 11, 643 A.2d at 497 n. 11 (1994). We note that the Court of Special Appeals's assumption that Mr. Simmons resided in Prince George's County was probably based on the fact that a substantial portion of Laurel is located in Prince

had to the instant case was that Mr. Simmons died at Greater Laurel Beltsville Hospital which is located in Prince George's County and MCA had an office located in Prince George's County.

■ We also note that, although the Court of Special Appeals suggested that the witnesses residing in Prince George's County outnumbered those residing in Montgomery County, *see Simmons,* 101 Md.App. at 107 n. 12, 643 A.2d at 497 n. 12, the trial transcript reflects that out of eleven witnesses testifying at trial, only one witness indicated a residence in Prince George's County. The remainder of the witnesses gave residence or business addresses in Howard County, Montgomery County, Baltimore City, Washington, D.C. and Alexandria, Virginia. Because a trial court enjoys wide discretion in determining whether to transfer an action on the grounds of *forum non conveniens,* we should therefore be reticent to simply substitute our judgment for that of the trial court. It was within the trial court's discretion to conclude that the convenience of the parties and witnesses weighed strongly in favor of transferring the case to Montgomery County. We note, however, that we may not have chosen to transfer this case to Montgomery County given the fact that the moving party has a strong burden to show that the case should be transferred to another forum and because Prince George's County and Montgomery County are adjoining counties. Nevertheless, we find that the trial judge did not abuse his discretion in determining that the present action should be transferred to Montgomery County.

### IV.

The Court of Special Appeals determined that the *forum non conveniens* transfer to Montgomery County was an abuse

---

George's County; however, Laurel is located in three counties. Mr. Simmons resided at 9424 Madison Avenue in North Laurel which is located in Howard County. The death certificate, which is an exhibit in this case, also reflects that Mr. Simmons was a Howard County resident. Thus, no contact with Prince George's County is established through those telephone calls.

of discretion and directed that the case be transferred back to the Circuit Court for Prince George's County for a new trial. We hold that the *forum non conveniens* transfer to Montgomery County was not an abuse of discretion. Our holding leaves unresolved the issue of whether the trial judge erred in failing to give a last clear chance instruction.

█ The Court of Special Appeals stated that "[w]hile we do not decide whether it was error for the court, on this record, to have refused to have given the requested instruction, we note that the trial court's reasoning for its refusal was inappropriate." *See Simmons,* 101 Md.App. at 111, 643 A.2d at 500. For instructional benefit at the new trial, the intermediate appellate court discussed last clear chance. That issue was not raised in the petition for certiorari, although it was addressed in the parties' briefs to this Court. Rather than decide an issue not raised in the petition for certiorari and not expressly decided by the Court of Special Appeals, we will remand the case to the intermediate appellate court.

We note that in the instant case, the trial court's determination not to give a last clear chance instruction may have been based on the assumption that Mr. Simmons's negligence, if any, was his continued refusal to go to the emergency room or to seek medical attention after his telephone conversation with Dr. Urquhart, as well as the evidence that it was this continued refusal to seek medical attention that was a contributing cause of his death. If the jury in the instant case found that Dr. Urquhart's telephone call of March 12, 1987 reassured Mr. Simmons that his symptoms did not require medical attention, that may be relevant to the issue of whether Mr. Simmons ceased to be negligent because of such reassurance, rather than the issue of last clear chance. Mr. Simmons was still experiencing the same or more severe symptoms after Dr. Urquhart's telephone call and he continued to refuse to seek medical attention after that telephone call. The trial court pointed out that the evidence established that if Mr. Simmons had gone to the hospital "within one-half hour or an hour of the time that he actually died, that he still ... would have

lived." Whether the failure to give a last clear chance instruction necessitates a new trial is an issue that should be addressed by the Court of Special Appeals.

## V.

We hold that a trial court may not *sua sponte* transfer a case on the grounds of *forum non conveniens*. In this case, however, because there was a motion to transfer filed by the defendants, that issue was not initially raised by the trial judge. We also hold that the trial court did not abuse its discretion in transferring this action to Montgomery County.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY RESPONDENTS.*

RAKER, Judge, dissenting:

I agree with the holding of the Court that a trial judge may not raise the issue of *forum non conveniens* on its own initiative. As the Court concludes today, Maryland Rule 2–327(c) requires a motion by a party prior to the transfer of a case on grounds of *forum non conveniens*. I disagree with the majority's resolution of this case, however, because I believe that there was no motion before the court for transfer of the cause on grounds of *forum non conveniens* and that there is no sound basis in the record for finding that the trial court treated the motion before it as a motion under Rule 2–327(c). To the extent that the Court attempts to supply such a reason, I part ways with the majority opinion.

Under the circumstances of this case, there are three conceivable grounds for the transfer of the action to Montgomery County. The first ground, which was raised by the defendant in the Circuit Court for Prince George's County, would be venue. It is undisputed at this point, however, that venue in Prince George's County was proper; consequently, any transfer on the basis of venue was error.

The second conceivable ground would be for the trial court to overrule the defendant's venue motion but raise the issue of *forum non conveniens* on its own initiative. As the Court has held today, however, the impetus for transfer for reasons of *forum non conveniens* must come from a party, not the court.

Finally, the trial court could interpret the defense's motion to dismiss or transfer for improper venue as a motion to transfer on the basis of *forum non conveniens*. In this case, when the trial court expressly asked defense counsel whether he intended to make a *forum non conveniens* argument, counsel did not say yes, but rather that one "could probably draw that analogy." It appears to me that counsel's answer represented a disavowal of any reliance on *forum non conveniens*.

Nonetheless, I am willing to assume, as the majority does, that defense counsel's response was a plausible basis for construing the defendant's motion as an effort to invoke the court's discretion to transfer on the basis of *forum non conveniens*. There are two problems with this resolution of the case, however. The first problem was noted by the plaintiff's attorney, who told the court during oral argument on the venue motion, "Your honor tries to get the—to find out if the defendant is trying to argue something like *forum non conveniens,* but they have not raised that doctrine. I have not briefed it...." The plaintiff argued, and I agree, that a motion based on improper venue and one based on *forum non conveniens* are procedurally distinct, and thus require different supporting arguments. Consequently, because the defendant's motion was expressly based on venue and the trial court never indicated that it was deciding the case based on *forum non conveniens,* the plaintiff never had a fair opportunity to brief and argue this issue.

The second problem with construing the defendant's venue motion as a *forum non conveniens* motion is that the trial court did not follow this path. That the court decided this case on venue grounds is evident from the oral ruling at the conclusion of the argument:

The Court has reviewed 6–201 and 6–202 [venue provisions in the Courts and Judicial Proceedings Article] as well as heard the arguments of counsel and read the memorandums and as well as the exhibits and the Court feels that the motion for—obviously I'm not going to dismiss the case, but I do believe it should be transferred to Montgomery County and I will sign an order to that effect.

Consequently, at the trial level, there were no findings of fact or balancing by the court of the factors bearing on whether the court should transfer the case based on the doctrine of *forum non conveniens.* In *Odenton Development v. Lamy,* 320 Md. 33, 575 A.2d 1235 (1990), Judge Chasanow, writing for the Court, explained that the pertinent factors include " 'the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of "the interests of justice." ' " *Id.* at 40, 575 A.2d at 1238 (quoting *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 30, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988)). The court may then order the case transferred only if these considerations weigh heavily in favor of the moving party. *Id.,* 575 A.2d at 1238.

The decision to transfer should be reversed, because venue in Prince George's County was proper and a motion for transfer on the grounds of *forum non conveniens* was lacking. Since the choice of the forum belongs to the plaintiff, that choice should not be disturbed lightly. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 84 cmt. c (1971), *quoted in Johnson v. Searle,* 314 Md. 521, 530, 552 A.2d 29, 33 (1989); *see also* 20 AM.JUR.2D *Courts* § 176 (1965) ("The doctrine of *forum non conveniens* should be applied with caution, exceptionally, and only for good reasons." (footnote omitted)).

Accordingly, I would affirm the mandate, though not the reasoning, of the Court of Special Appeals and order a new trial of this cause in the Circuit Court for Prince George's County.

Judge Bell has authorized me to state that he joins in the views expressed herein.