729 A.2d 956

**Jennifer Chan LEUNG et al.**

**v.**

**Joao NUNES et al.**

**No. 89, Sept. Term, 1998.**

Court of Appeals of Maryland.

May 17, 1999.

218

Michael C. Michaud, Towson; David B. Stratton (William W. Nooter, Jordan, Coyne & Savits, L.L.P., Washington, DC, all on brief), for Petitioners.

Leonard A. Orman, P.A. (The Orman Law Firm, on brief), Baltimore, for Respondents.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

RODOWSKY, Judge.

This motor tort case involves three vehicles, each of which was owned and operated by nonresidents of Maryland. The plaintiffs chose the Circuit Court for Baltimore City as their forum, but shortly thereafter that court transferred the action to the Circuit Court for Howard County. We shall hold that the transfer constituted reversible error, thereby affirming the judgment, based on an unreported opinion, of the Court of Special Appeals.

The accident occurred in Howard County on August 3, 1990, at approximately 9:00 p.m. in the northbound lanes of Interstate 95 approximately one-quarter mile south of the entrance to the throughway leading to the Baltimore Harbor Tunnel. Suit was filed in the Circuit Court for Baltimore City on July 2, 1992, by Joao and Maria Nunes, husband and wife, individually and on behalf of their two minor children. All were occupants of a vehicle driven by Mr. Nunes. The caption of the complaint reflected that the Nuneses reside in Newark, New Jersey.

Five defendants were named in the complaint. They were Jennifer Chan Leung (Leung) of Washington, D.C., the owner and operator of one of the vehicles involved in the accident; Denver Patrick Commock (Commock) of Alexandria, Virginia, the operator of another vehicle involved in the accident; and three corporations. All of the corporate defendants were alleged to own the motor vehicle operated by Commock. They were Ready Key, Inc. of Caldwell, New Jersey, Rapid Rentals, Inc. d/b/a Budget Rent–A–Car, as to whom service was directed to be made on a resident agent in Baltimore City, and Budget Rent–A–Car of Maryland, Inc., as to whom service was directed to be made on a resident agent in Prince George's County, Maryland. Service on all of the defendants was accomplished by July 30, 1992.

Prior to filing any answer, Leung, on August 13, moved to dismiss the complaint or, in the alternative, to transfer the action to the Circuit Court for Howard County. No affidavit accompanied that motion; it was supported exclusively by the

motor vehicle accident report that was completed by a Maryland State Police trooper who investigated the accident. Less than two weeks later the Nuneses filed their opposition to the motion. That opposition added no additional facts. By order of September 23, 1992, the Circuit Court for Baltimore City transferred the action to the Circuit Court for Howard County and canceled a hearing on the Leung motion that had been scheduled.

The police report described the accident as occurring when the Leung vehicle had completed a lane change into the middle lane and lowered its speed. The vehicle operated by Commock in the middle lane struck the Leung vehicle, and then the vehicle operated by Mr. Nunes struck the Commock vehicle. A twenty-eight year old woman who resided in Washington, D.C. was a passenger in the Leung vehicle. A thirty-one year old male who was a resident of either Montgomery or Prince George's County, Maryland was a passenger in the Commock vehicle.[1] There were three passengers in the Nunes vehicle, Mrs. Nunes, the Nuneses' daughter Nancy, then age eleven, and their daughter Marget, then age nine. The report stated that the owner of the Commock vehicle was Rapid Rentals, Inc., with an address in Arlington, Virginia. The accident report further reflected that the Leung vehicle and the Commock vehicle were driven away from the accident scene and that the Nunes vehicle was towed away. A Howard County ambulance and a Baltimore County ambulance responded, and the patients were taken to St. Agnes Hospital in Baltimore City.

In the course of the proceedings in the Circuit Court for Howard County the Nuneses sought retransfer to Baltimore City which Leung, joined by Commock, successfully resisted. The individual defendants filed counterclaims against Mr. Nunes and cross-claims against each other and the corporate defendants. Ready Key, Inc. of Caldwell, New Jersey was

---

1. The passenger in the Commock vehicle resided in Takoma Park, a municipality which, at the time, lay partly in Montgomery County and partly in Prince George's County.

voluntarily dismissed, and Rapid Rentals, Inc. and Budget Rent–A–Car of Maryland, Inc. were granted summary judgment. The remaining claims proceeded to trial before a jury on liability only. The jury found that there was no liability on the part of any individual party, as defendant to the complaint, as a counterclaim defendant, or as a cross-claim defendant.

The Nuneses appealed to the Court of Special Appeals, contending that the action should not have been transferred to Howard County. They obtained permission from the Court of Special Appeals to proceed without a transcript. Consequently, neither that court nor we know who actually testified at the trial on liability issues. The Court of Special Appeals agreed with the Nuneses' contention that the action was erroneously transferred. That court further held that it would

> "not require the Nuneses to demonstrate specific prejudice because when choosing a particular venue, tactical and strategic reasons usually dictate the decision. Thus, a litigant's attempt to demonstrate why he or she chooses a particular venue necessarily is not subject to strict evidentiary proof. We therefore presume prejudice or injury when the court improperly deprives a litigant of his or her permitted venue of choice."

We granted petitions for certiorari filed by Leung and Commock which are limited to the issues of error and prejudice.

### I

■ Petitioners' first issue is whether the Circuit Court for Baltimore City properly applied Maryland Rule 2–327(c) which reads:

> "On motion of any party, the court may transfer any action to any other circuit court where the action might have been brought if the transfer is for the convenience of the parties and witnesses and serves the interests of justice."

Rule 2–327(c) does not deal with a transfer for want of venue; it confers on a circuit court the discretionary power to transfer even if the transferring court is a proper venue.

Here the venue is determined by Maryland Code (1974, 1995 Repl.Vol.), § 6–202(11) of the Courts and Judicial Proceedings Article (CJ). An action for damages against a nonresident individual may be brought in any county in this State. *Id.* *See also* Md.Code (1974), Revisor's Note following § 6–202 and *Alcarese v. Stinger,* 197 Md. 236, 78 A.2d 651 (1951). Further, the directions for service of the complaint, indicating that two of the corporate defendants had resident agents in Maryland, does not establish that either corporation carried on a regular business or maintained a principal office in this State. See CJ § 6–201(a). Each Maryland corporation must have at least one resident agent, but so must any foreign corporation which has registered or qualified to do business in this State. Md.Code (1975, 1993 Repl.Vol.), §§ 2–108(a)(2) and 7–205(a)(1) of the Corporations and Associations Article (CA). It is, however, optional with a foreign corporation that has registered or qualified to do business in Maryland whether to certify to the State Department of Assessments and Taxation "a principal office in this State, which may be a business office of the corporation." CA § 7–205(b)(1). Leung, as the movant for transfer, did not demonstrate that any corporate defendant carried on a regular business or had a principal office in Maryland. Under the venue statute an "[a]ction against a corporation which has no principal place of business in the State [may be brought w]here the plaintiff resides." CJ § 6–202(3). In this action, all of the plaintiffs reside in New Jersey. Accordingly, the Nuneses had a right to select Baltimore City as the venue for their action, and the issue is one of transfer under Rule 2–327(c).

In *Odenton Development Co. v. Lamy,* 320 Md. 33, 575 A.2d 1235 (1990), this Court articulated how trial courts should approach motions for transfers under Rule 2–327(c) motions. There, we stated:

"When determining whether a transfer of the action for the convenience of the parties and witnesses is in the interest of justice, a court is vested with wide discretion.... It is the moving party who has the burden of proving that the interests of justice would be best served by transferring

the action ... and a motion to transfer should be granted only when the balance weighs strongly in favor of the moving party. [A] court 'must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of "the interest of justice." ' "

*Id.* at 40, 575 A.2d at 1238 (citations omitted).

In the instant case the petitioners essentially have one factor to argue in support of transfer, namely, that Howard County is the situs of the accident. Thus, the question presented resolves into whether that factor, under the circumstances of this case, weighs strongly in favor of transfer.

Proper regard for the plaintiff's choice of forum is the reason why "a motion to transfer [from the forum chosen by the plaintiff] should be granted only when the balance weighs strongly in favor of the moving party." *Urquhart v. Simmons*, 339 Md. 1, 18 n. 7, 660 A.2d 412, 420 n. 7 (1995) (citing *Odenton*, 320 Md. at 40, 575 A.2d at 1238). Commentators on Rule 2–327(c) have recognized that "due consideration must ... be given to the plaintiff's selection of forum, and this selection will not be altered solely because it is more convenient for the moving party to be in another forum." P.V. Niemeyer & L.M. Schuett, *Maryland Rules Commentary* 215–16 (2d ed. 1992) (Niemeyer & Schuett).

This respect for the plaintiff's choice of forum is derived largely from federal law developed under Title 28 U.S.C. § 1404(a).[2] *See Urquhart*, 339 Md. at 10, 660 A.2d at 416; Niemeyer & Schuett at 215. *See also Doe v. Connors*, 796 F.Supp. 214, 221 (W.D.Va.1992) ("[T]he plaintiff has the primary right to choose his forum and that selection is not to be easily overthrown."); M. Moore, *Federal Practice*

---

**2.** 28 U.S.C. § 1404(a) reads:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

§ 111.13[1][c][i], at 111–67 (Mathew Bender 3d ed. 1997) (Moore) ("As a general rule, the plaintiff's choice of forum is given significant weight. . . ."); Annotation, *Questions as to Convenience and Justice of Transfer Under Forum Non Conveniens Provision of Judicial Code (28 U.S.C. § 1404(a))*, 1 A.L.R. Fed. 15, 49–50 (1969) ("Unless the balance of convenience is strongly in favor of the defendant, or such balance weighs heavily in favor of the defendant, the plaintiff's choice of forum should not, or should rarely, be disturbed."). The plaintiff's choice, however, is not an absolute and uncontrolled privilege that is determinative under present *forum non conveniens* law. 1 A.L.R. Fed. at 51.

In the two decisions of this Court applying Rule 2–327(c), *Urquhart* and *Odenton,* we sustained the transfers there involved. Each of these cases, however, is substantially different on its facts from the instant matter. *Urquhart* was a wrongful death action based on alleged medical malpractice. The plaintiff's decedent was a resident of Howard County, 339 Md. at 18 n. 8, 660 A.2d at 420–21 n. 8, and the action was filed in Prince George's County. The defendants were members of a professional association, all of whom lived in Montgomery County where they maintained two offices. Each of them also had privileges at every hospital within Montgomery County. The defendants also maintained an office in Prince George's County and had privileges at one hospital located there. The alleged malpractice occurred following a cardiac catheterization performed at a hospital in Montgomery County. The alleged negligence included a failure properly to advise the patient prior to discharge from the hospital and a failure properly to respond to the patient's telephone calls placed to one of the defendants' Montgomery County offices. Eventually the patient presented to a hospital in Prince George's County where he died. We sustained transfer of the case to Montgomery County. *Id.* at 21, 660 A.2d at 422.

*Urquhart* involved many factors, in addition to the place where the negligent acts or omissions were alleged to have occurred, that weighed in favor of trial in Montgomery County. In the instant matter the only relevant contact that the

petitioners have with Howard County is that they happened to have been passing through that county on an interstate highway when the accident occurred.

*Odenton* was a tort action for damages sustained when the plaintiff slipped on ice on the sidewalk outside of a grocery store located in Anne Arundel County. The plaintiff was a resident of that county, but chose to bring her action against the store and the landlord in Baltimore City. 320 Md. at 36, 575 A.2d at 1236.

We sustained a transfer of the action to Anne Arundel County. There were many factors pointing in that direction in addition to the situs of the alleged tort. In addition to the plaintiff's being a resident of Anne Arundel County, each of the defendants carried on a regular business there. Because the accident involved a fixed commercial location, the transferring court could also have inferred that witnesses on liability could be found among the customers and employees of the store. As matters actually developed, five of the six witnesses who testified at trial were residents of Anne Arundel County. *Id.* at 41, 575 A.2d at 1238–39.

The discretionary decision by a trial court on whether to transfer an action, and appellate review of that exercise of discretion, are predominantly fact driven. Very few generalizations can be made in this area of the law. Nevertheless, decisions under 28 U.S.C. § 1404(a) reflect the rather general opinion that a transfer is not sustainable solely on the ground that the transfer requested is to the place where the claim arose.

Illustrative is *Headrick v. Atchison, T. & S.F. Ry. Co.*, 182 F.2d 305 (10th Cir.1950). There the plaintiff, a resident of Missouri, was injured in an accident while a passenger in a bus being operated by the defendant in California. The plaintiff sued in New Mexico after settlement negotiations had broken down and the statute of limitations in California had run. The defendant sought a transfer to California, primarily to implead another bus company which was said by the defendant to have caused the accident. The district court

dismissed the action, but the Tenth Circuit reversed. The fact that limitations had run in California was not a factor in the court's decision. On that aspect of the case the court held that, within the system of federal courts, a diversity of citizenship action that is transferred to a court in another state remains controlled by the law of the state of the transferor court, that is, that New Mexico limitations would have to be applied to the action in California. *Id.* at 309–10.

We quote below the appellate court's rationale against transfer.

"Here the court had before it only an agreement that the cause of action arose in California, that the defendant was [amenable] to process in California, that the plaintiff and defendant are not residents of New Mexico, that none of the witnesses likely to be called in the trial of the case reside in New Mexico, that the Key System Bus Company whose negligence defendant alleges caused plaintiff's injury is not amenable to process in New Mexico. There is no showing as to the number of witnesses, who they are or where they live, or what the additional expense would be to the defendant to try the case in New Mexico. It appears that the trial court believed that California was the most convenient forum because the accident occurred there. This in itself would not be sufficient. The plaintiff lives in Missouri. New Mexico is closer to him than California and no doubt more convenient. The court should have sufficient proof from which it could determine, in justice to both parties and the witnesses, the most convenient forum. There is no suggestion that the case was brought in New Mexico, to harass, vex or oppress the defendant. In fact it is frankly stated that New Mexico was the only forum open to the plaintiff where he would not be confronted with the defense of the statute of limitations. There was a total lack of proof from which the court could weigh relative advantages and obstacles to a fair trial or from which it could find that the balance was clearly in favor of the defendant. We think the trial court should have such proof before it may exercise its discretion in determining where that balance lies."

*Id.* at 310–11. It is noteworthy that in *Headrick,* the defendant did business in the state that was the situs of the tort, but transfer to that state was denied. In the case before us, the petitioners, who are the only defendants against whom this case would be retried, do not reside in Howard County, and the petitioners have not shown that any of the original corporate defendants regularly conducted business in Howard County.

That the movant for transfer does not meet the movant's burden of proof solely by requesting transfer to the place where the cause of action arose is also demonstrated, under a variety of factual scenarios, by *Kimball v. Schwartz,* 580 F.Supp. 582, 588 (W.D.Pa.1984); *Gdovin v. Catawba Rental Co.,* 596 F.Supp. 1325, 1326–27 (N.D.Ohio 1984); *Culbertson v. Ford Motor Co.,* 531 F.Supp. 406, 408 (E.D.Pa.1982); *Sternaman v. Macloskie,* 37 F.R.D. 316, 318 (E.D.S.C.1965); *Oltman v. Currie,* 231 F.Supp. 654, 655 (E.D.S.C.1964); and *Sioux City & New Orleans Barge Lines, Inc. v. Upper Mississippi Towing Corp.,* 221 F.Supp. 737, 739 (S.D.Tex.1963).

In the case before us the petitioners have furnished almost no information as to why the balance of convenience weighs heavily in favor of a trial in Ellicott City, the county seat of Howard County, in contrast with one in downtown Baltimore City. Unlike *Odenton,* the fact witnesses for liability are not clustered in Howard County and, with the exception of one resident of the Maryland suburbs of the District of Columbia, no known possible eyewitness is even a resident of Maryland. Were the action to proceed to testimony on damages, one would reasonably expect that the bulk of the Nuneses' medical treatment took place near Newark, New Jersey.

Petitioners cite to a principle recognized by federal courts that they believe supports the trial court's decision to move the case to Howard County. According to numerous federal cases, "[a] plaintiff's choice of venue . . . has minimal value . . . where the plaintiff is not a resident of the judicial district in which he has instituted suit[.]" Moore § 111.13[1][c][ii], at 111–69; 1 A.L.R. Fed. at 51. *Cf. Piper Aircraft Co. v. Reyno,*

454 U.S. 235, 256, 102 S.Ct. 252, 266, 70 L.Ed.2d 419, 436 (1981) ("Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference."). This principle loses its force in the case at bar where, not only were the plaintiffs not residents of the venue of their choice, but the defendants' choice of venue was not the venue in which they resided. Nor is the plaintiff a resident of the venue sought by the defendants, as was the case in *Odenton.*

The petitioners also argue that an Ellicott City situs for trial is more convenient because it is closer to the District of Columbia than Baltimore City. Of course, from the Nuneses' standpoint a trial in Ellicott City is further from Newark than Baltimore City by the same distance.[3] Similarly offsetting are the facts that one responding ambulance was from Howard County, but the patients were taken to a Baltimore City hospital.

For these reasons we hold that the proponents of transfer have failed to meet the burden of proof. Indeed, at best, the balancing of factors produces an equipoise, so that the plaintiffs' choice of forum controls. *See Barr Laboratories, Inc. v. Quantum Pharmics, Inc.,* 827 F.Supp. 111, 114 (E.D.N.Y. 1993) ("[T]his Court declines to transfer this action to Maryland because defendants have not demonstrated that the inconvenience to them in this forum outweighs the inconvenience to Barr were this action tried in Maryland."); *Seagoing Uniform Corp. v. Texaco, Inc.,* 705 F.Supp. 918, 936 (S.D.N.Y. 1989).

## II

The petitioners next submit that, even if the Circuit Court for Baltimore City abused its discretion in transferring this action to the Circuit Court for Howard County, the judgment of the latter court must be affirmed because the

---

**3.** The direct distance between the two courthouses is approximately ten miles, but the travel time by automobile is about thirty minutes in rush hour traffic.

error is not prejudicial under the facts of this case and because prejudice should not be presumed. They argue that there is no proof by the Nuneses that they were improperly prejudiced in anyway by having their case tried before a Howard County jury. The Nuneses submit that the harm lay in their inability to try their case in the venue which they had properly and legally selected.

In her brief Leung argues that, under the reasoning of the Court of Special Appeals, "any time a transfer of an action is granted to an alternate, but appropriate venue, the mere fact that this alternate venue was not the plaintiff's first choice would always result in prejudice to the plaintiff." The result, Leung says, is that "there would be no circumstances under which a transfer could be granted under Maryland Rule 2–327(c) if the plaintiff opposed such transfer." The defect in this argument is that it completely skips the step in the appellate review at which the court first must find that there has been an abuse of discretion in ordering the transfer. The need to determine whether there must be a retrial arises only in cases, such as the one now before us, in which the grant or denial of transfer exceeds the bounds of the trial court's discretion.

Commock argues that the standard to be applied in determining prejudice to the litigant is whether the error influenced the outcome of the case. If that is the standard, it has not been met in this case where no question has been raised as to the composition or conduct of the jury, and there is no contention that the trial in Howard County was unfair in anyway.

In support of his position Commock cites *Whittier v. Emmet*, 281 F.2d 24 (D.C.Cir.1960), *cert. denied,* 364 U.S. 935, 81 S.Ct. 380, 5 L.Ed.2d 367 (1961). In *Whittier* the district court had rendered judgment in favor of the plaintiffs and against the Government, as defendant, in consolidated cases. Two of the consolidated cases, brought under the Tucker Act, had been transferred erroneously to the judgment rendering court which was an improper venue. The appellate court said that

the plaintiffs could not complain of the error inasmuch as they had requested the transfer and said that the error would be harmless as to the Government, if it were to prevail. In that context the court said: "Once the case has been heard fully and fairly on the merits, the reasons for reversing the judgment on grounds of improper venue are substantially diminished in the absence of prejudice to a party who has preserved his standing to complain by timely objection." *Id.* at 30.

In its mandate the *Whittier* court did not strictly apply the above-quoted dictum on which petitioners rely. The Government did not completely prevail with respect to the plaintiffs' claim for attorneys' fees. In remanding for possible further proceedings in a proper venue the court did not refer to any prejudice other than the improper venue.

*In re Josephson*, 218 F.2d 174 (1st Cir.1954), is also quoted by Commock. It is one of a number of federal appellate cases in which review by way of mandamus is sought of the grant or denial of a transfer. The First Circuit found it "difficult to see how" the transfer to New Mexico from Massachusetts that was the subject of the petition for mandamus could be reversed by the Tenth Circuit "merely on the ground that the case should not have been transferred to the District of New Mexico" because the result "would certainly make an administrative mess of a section of the [United States] Code intended to serve the interests of convenience and expedition." *Id.* at 180. What the First Circuit actually did in *Josephson*, however, was to hold that it had the power, by way of mandamus and prior to final judgment, to correct an error in the grant or denial of a transfer, but the court then held that, under the facts in *Josephson*, issuance of the writ was unwarranted.

The federal courts of appeals for decades have struggled with the question of whether they should entertain petitions for mandamus to review orders granting or denying transfers, particularly where the error is alleged to be an abuse of discretion in applying correct legal principles. *See* 15 C.A. Wright, A.R. Miller, & E.H. Cooper, *Federal Practice and Procedure* § 3855 (2d ed.1986). The majority in *A. Olinick &*

*Sons v. Dempster Brothers, Inc.,* 365 F.2d 439 (2d Cir.1966), explained that the courts of appeals, although reluctant to interfere with the exercise of discretion by the district courts, at the same time wished "to reserve power to redress clear-cut abuses of discretion in the handling of § 1404(a) motions, since such abuses cause great inconvenience and expense to the litigants and are almost impossible to correct by review after trial." *Id.* at 444. In support the *Olinick* court cited *Ford Motor Co. v. Ryan,* 182 F.2d 329, 330 (2d Cir.), *cert. denied,* 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950). In *Ford Motor* the court held that it had power to issue mandamus before final judgment in transfer cases because, if the petitioners for mandamus should lose after trial on the merits following denial of their request for transfer, "any error in the interlocutory order would probably be incorrectible on appeal, for petitioners could hardly show that a different result would have been reached had the suit been transferred." *Id.* at 329.[4] *See also Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.,* 865 F.2d 513, 520 (2d Cir.1989); *Magnetic Eng'g & Mfg. Co. v. Dings Mfg. Co.,* 178 F.2d 866 (2d Cir.1950).

In a Ninth Circuit mandamus case the court granted the writ and directed that the district court vacate an order transferring the action. *Sunshine Beauty Supplies, Inc. v. United States Dist. Court for the Cent. Dist. of California,* 872 F.2d 310 (9th Cir.1989). The court reasoned that, although the petitioner could appeal after final judgment in the transferee district, "the prejudice that results from an erroneous transfer order is of a type not correctable on appeal." *Id.* at 311. By this statement we take the court to have meant that the prejudice lies in trying the case in a forum to which it should not have been transferred.

---

**4.** Writing separately in *Olinick,* Judge Friendly pointed out that, in the fifteen years since the Second Circuit first announced in *Ford Motor* its willingness to consider applications for mandamus in transfer cases, the court had never granted one. *Olinick,* 365 F.2d at 446. He urged the court to "end this sorry business of invoking a prerogative writ to permit appeals ... from discretionary orders fixing the place of trial." *Id.*

*Southern Railway Co. v. Madden,* 235 F.2d 198 (4th Cir.), *cert. denied,* 352 U.S. 953, 77 S.Ct. 328, 1 L.Ed.2d 244 (1956), was an appeal after final judgment against the defendants whose motion for transfer was held to have been erroneously denied. There were also trial errors. In reversing and remanding for a new trial the Fourth Circuit directed that the case be transferred, without describing any prejudice to the appellant as to the forum other than the abuse of discretion in denying transfer.

The federal cases that recognize, at least theoretically, the availability of mandamus prior to final judgment supports reversal in the instant matter. The federal mandamus cases implicitly recognize that there is prejudice in plaintiffs' being required to try their cases in forums to which they have been erroneously transferred; otherwise there would be no purpose in proclaiming and preserving the power to rectify by mandamus a true abuse of discretion before final judgment.

Further, we do not accept that the aggrieved plaintiff must show that the alleged error was result-altering in order for it to be remedied after final judgment. That is a nearly impossible standard to meet when juries are randomly selected within the competing venues. Under a standard of actual prejudice a transfer resulting from an abuse of discretion would be effectively unreviewable. That is not a desirable result from the standpoint of the " 'public interest factors of systemic integrity and fairness.' " *Urquhart,* 339 Md. at 17, 660 A.2d at 420 (citing *Odenton,* 320 Md. at 40, 575 A.2d at 1238) (in turn, citing *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 30, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22, 32 (1988)).

Here, we have held in Part I that the transfer was an abuse of discretion. The Nuneses seek their remedy after final judgment was entered in the wrong forum.[5] Although the

---

**5.** We have recently held that an order denying transfer is not appealable under the collateral order doctrine. *Pittsburgh Corning Corp. v. James,* 353 Md. 657, 666, 728 A.2d 210, 214 (1999). Further, nothing in this opinion is intended to indicate that review by mandamus in this case would have been available at the time the transfer order was

time spent by the Nuneses in the wrong forum, over their repeated objections, cannot be restored, the remedy is a new trial in the Circuit Court for Baltimore City against Leung and Commock.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE PETITION-ERS.*

entered, under the principles stated in *Keene Corp. v. Levin*, 330 Md. 287, 623 A.2d 662 (1993), and *Doering v. Fader*, 316 Md. 351, 558 A.2d 733 (1989).