66 A.3d 60

Tracy SCOTT, as Mother and Next Friend of Charlie Scott, a Minor

v.

Raja HAWIT, et al.

No. 2838, Sept. Term, 2011.

Court of Special Appeals of Maryland.

May 3, 2013.

Julia R. Arfaa, (Michael L. Sanders, Wais, Vogelstein, Bedigian and Arfaa, LLC, on the brief), Towson, MD, for Appellant.

Mary E. Kaslick & James F. Rosner, (Kaslick, Prete & Kelly, LLC, Frederick, MD, Jessica P. Butkera, Chason, Rosner, Leary & Marshall, LLC, Towson, MD), on the briefs, for Appellee.

Panel: DEBORAH S. EYLER, WATTS, LAWRENCE F. RODOWSKY, (Retired, Specially Assigned), JJ.

RODOWSKY, J.

Appellants, the plaintiffs in a medical malpractice action, are aggrieved by the transfer of their claim by the

Circuit Court for Baltimore City, on the theory of *forum non conveniens,* to the Circuit Court for Calvert County.[1] The claim is asserted against two defendants who are independent of each other and who allegedly committed, in separate counties, and at separate times, negligent acts or omissions that substantially contributed to the ultimate harm. For the reasons hereinafter set forth, we shall reverse and remand for further proceedings in the forum originally selected by the plaintiffs.

The appellants are Tracy Scott and her minor son, Charlie Scott. Charlie was born June 3, 2001, at Calvert Memorial Hospital in Calvert County, Maryland. One of the defendant-appellees is Raja I. Hawit, M.D. Dr. Hawit is a pediatrician whose office is located in Huntingtown, Calvert County. He attended Charlie as a newborn at Calvert Memorial Hospital and thereafter treated him in that county for years. The other defendant-appellee is The Johns Hopkins Hospital (Hopkins), whose principal place of business is in Baltimore City.

Appellants filed their complaint in the Circuit Court for Baltimore City on October 11, 2011. In addition to the present appellees, it named two additional defendants, Carolyn J. Ogborn, M.D., and Tyler Reimschisel, M.D., both of whom were employed by Hopkins. Dr. Ogborn was served at Hopkins and Dr. Reimschisel, who had changed employment, was served in Tennessee.

The complaint alleges that, on the day after the birth, Dr. Hawit diagnosed Charlie with jaundice and ordered testing for bilirubin levels. The measurements placed Charlie in the "medium to high risk for developing kernicterus." [2] Charlie

---

1. An order transferring an action from one circuit court to another on a *forum non conveniens* theory is considered to be a final judgment. *Brewster v. Woodhaven Bldg. & Dev. Inc.,* 360 Md. 602, 759 A.2d 738 (2000).

2. MedlinePlus, a service of the U.S. National Library of Medicine, National Institutes of Health, explains:

was discharged home on June 5 with instructions to have bilirubin measured the next day. Those levels were elevated and placed Charlie "in the high risk category for development of kernicterus." On June 8, 2001, Charlie was admitted to Calvert Memorial Hospital for double phototherapy and discharged on June 9 for phototherapy at home. On June 9, Dr. Hawit advised discontinuing home phototherapy, with the patient to return to the doctor's office in three to four weeks. On June 20, 22, and July 10, Mrs. Scott brought Charlie to Dr. Hawit's office and described the child's complaints. On July 11, 2001, she obtained a referral to Dr. Reimschisel at Hopkins.

Appellants' allegations against Hopkins are more fully set forth in their first amended complaint, filed January 3, 2012. On November 4, 2011, appellants had voluntarily dismissed, without prejudice, Drs. Ogborn and Reimschisel as defendants, but the amended complaint continued to assert negligence by them, as well as by a physician's assistant, Michele Daniels, for which Hopkins was said to be liable.

Plaintiffs allege that Dr. Hawit had spoken by telephone with Dr. Reimschisel who agreed to evaluate Charlie. Charlie was first seen by Ms. Daniels and then by Dr. Ogborn. Dr. Ogborn and Dr. Reimschisel separately discussed Charlie's condition with the parents. Thereafter, Dr. Ogborn advised that Charlie was "a normally developing and healthy child" and that she and Dr. Reimschisel "also jointly agreed that

---

"Kernicterus is a rare neurological condition that occurs in some newborns with severe jaundice.

. . . .

"Kernicterus is caused by very high levels of bilirubin. Bilirubin is a yellow pigment that is created in the body during the normal recycling of old red blood cells. High levels of bilirubin in the body can cause the skin to look yellow (which is called jaundice).

"In some cases when there are extremely high levels of bilirubin in the body or the baby is extremely ill, the substance will move out of the blood and collect in the brain tissue. This can lead to serious neurological complications, including brain damage and hearing loss."

www.nlm.nih.gov/medlineplus/ency/article/007309.htm, visited February 25, 2013.

Charlie should be sent home from the Hospital without further evaluation, care or treatment."

Appellants further allege that, by August 21, 2001, Charlie's condition had worsened and that he was referred to Children's National Medical Center for evaluation of seizure activity. "As the months passed, Charlie was re-admitted to Children's National Medical Center and other institutions for developmental problems and seizures seventeen to thirty-four times per day."

The complaint concludes its factual narrative by stating that Charlie is "extremely compromised both cognitively and physically. He receives twenty-four (24) hour per day care from his" parents "and his injuries are permanent due to kernicterus and his inappropriately treated elevated bilirubin levels and clinical signs and symptoms within the months following his birth."

Dr. Hawit, on November 21, 2011, responded to the complaint with a motion to transfer the action to the Circuit Court for Calvert County pursuant to Rule 2–327(c). That Rule provides:

"On motion of any party, the court may transfer any action to any other circuit court where the action might have been brought if the transfer is for the convenience of the parties and witnesses and serves the interests of justice."

Hopkins answered the complaint on November 23, 2011. It filed its own motion to transfer the action on December 28, 2011.

The two motions to transfer were heard on January 11, 2012. No evidence was taken. Dr. Hawit's motion is accompanied by his affidavit. There is no supporting affidavit for Hopkins's motion. The hearing proceeded in large part on the allegations of the complaint and the representations of counsel. The basic factors are these:

- The plaintiffs were and are residents of Calvert County.
- Dr. Hawit's medical office and residence are in Calvert County.

- The alleged negligence by Dr. Hawit occurred in Calvert County.
- Dr. Hawit does not regularly practice in Baltimore City.
- Hopkins's principal place of business is in Baltimore City.
- The alleged negligence by Hopkins's agents occurred in Baltimore City.
- Venue was proper in Baltimore City.[3]

In the course of the hearing, the court inquired of counsel for Hopkins whether that defendant was "volunteering all of your agents to make the trip to Calvert County?" Counsel responded affirmatively and without qualification. At the conclusion of his argument, counsel for Hopkins clarified that his client was "willing to make the two physicians and nurse [Drs. Ogborn and Reimschisel and Ms. Daniels] who saw the patient in his one brief, hour visit to Hopkins on July 12th available for any action that may take place in Calvert County."

The court, in granting the motions to transfer, gave the following reasons for its decision. The interests of the plaintiffs in Baltimore City were "diminished" because (1) the plaintiffs "do not live here" and (2) "the allegations of negligent care weigh more heavily on Dr. Hawit's care and the length both in duration and number of times that he saw the minor plaintiff[.]" The court said that those factors "weigh strongly" in favor of adjudication in Calvert County, where the plaintiffs live, Dr. Hawit is located, and "where the majority of the care that allegedly led to the injuries occurred." The court's further basis for the transfer was that

"the one party that is as a party inconvenienced by transferring this case to Calvert County, Johns Hopkins Hospital, is

---

3. Maryland Code (1974, 2006 Repl.Vol.), § 6–201(b) of the Courts and Judicial Proceedings Article provides:

 "If there is more than one defendant, and there is no single venue applicable to all defendants . . ., all may be sued in a county in which any one of them could be sued, or in the county where the cause of action arose."

quite willing to accept that transfer, in fact, asks for it by separate motion."

This appeal followed. Additional facts will be stated in our discussion.

## Discussion

 From the standpoint of venue, this action could have been brought in Baltimore City or in Calvert County.

"[W]e note that there can be more than one appropriate venue in which an action may be filed. When this is the case, a plaintiff is entitled to select the forum in which to bring his or her action. *Leung v. Nunes,* 354 Md. 217, 224–25, 729 A.2d 956, 959–60 (1999); *Wilde v. Swanson,* 314 Md. 80, 93–94, 548 A.2d 837, 843–44 (1988)."

*Nodeen v. Sigurdsson,* 408 Md. 167, 178, 968 A.2d 1075, 1081–82 (2009). Thus, as this case comes to us, venue in Baltimore City is proper.[4]

 Thus, the issue is whether the circuit court erred in ordering the action transferred to Calvert County on the motions of Dr. Hawit and, later, of Hopkins, asserting *forum non conveniens.* The rules governing this issue were summarized by the Court of Appeals in *Nodeen, supra,* where the Court said:

---

4. Hopkins has filed in this Court an appendix to its brief in which it has included, *inter alia,* an affidavit by the director of its perinatal outreach/maternal transport program (the Program). The affiant affirms that the Program is and has been conducted in Calvert County by Hopkins. The Program provides twenty-four hour per day, seven day per week telephone consultation with Hopkins's perinatologists to facilities such as Calvert Memorial Hospital. The affiant travels to Calvert Memorial Hospital monthly offering high risk pregnancy consultations. Indeed, on January 12, 2001, Tracy Scott, then pregnant with the infant plaintiff, "had a perinatal consult at Calvert Memorial Hospital in Calvert County with David A. Nagey, M.D., a physician at Johns Hopkins Hospital."

This information was not before the circuit court and is not part of the record before us.

In any event, Hopkins generally appeared in this action by filing an answer to the complaint. Hopkins thereby waived any objection to venue. *See Fisher v. De Marr,* 226 Md. 509, 174 A.2d 345 (1961).

"A party who moves to transfer an action to an alternate forum under Maryland Rule 2–327, has the burden of demonstrating that the transfer to that forum better serves the interests of justice. *Odenton Development v. Lamy*, 320 Md. 33, 40, 575 A.2d 1235, 1238 (1990). When a trial court considers the motion, the court must employ a balancing test whereby it weighs the convenience of the parties and witnesses along with the interests of justice. *Id.* Although the court generally has wide discretion in deciding whether to grant the motion, it is an abuse of that discretion for the court to disturb a plaintiff's choice of venue when the balance does not weigh strongly in favor of the proponents of the transfer. *See Leung*, 354 Md. at 224, 729 A.2d at 959–60 ('Commentators on Rule 2–327(c) have recognized that "due consideration must ... be given to the plaintiff's selection of forum, and this selection will not be altered solely because it is more convenient for the party moving to be in another forum." ') (quoting P.V. Niemeyer & L.M. Schuett, *Maryland Rules Commentary*, 215–16 (2d ed.)); *see also Cobrand v. Adventist*, 149 Md.App. 431, 439, 816 A.2d 117, 121 (2003) ('To simply call it a balancing test ... is in some regards ... misleading because [our decisions] make it clear that "a motion to transfer should only be granted when the balance weighs strongly in favor of the moving party." ') (quoting *Odenton*, 320 Md. at 40, 575 A.2d at 1238; *Urquhart v. Simmons*, 339 Md. 1, 18 n. 7, 660 A.2d 412, 420 n. 7 (1995); *Leung*, 354 Md. at 224, 729 A.2d at 959)."

*Id.* at 180–81, 968 A.2d at 1083.

The instant action is atypical of the Rule 2–327(c) cases seen in the last decade by this Court. In these more typical cases, there is a single tort, allegedly committed by a single defendant or organization against whom venue will lie in two or more counties, causing the plaintiff to select a forum that is perceived to be more advantageous, even though that forum might not be the situs of the tort, the residence of the plaintiff, or the principal place of business of the defendant. *See Smith v. Johns Hopkins Cmty. Physicians, Inc.*, 209 Md.App. 406, 59

A.3d 1070 (2013) (affirming transfer from Baltimore City to Baltimore County of wrongful death claim by Baltimore County widow, Harford County child and Delaware child against defendant corporation, having its principal office in Baltimore County, and against its agent, a resident of Baltimore County, where tort was committed in Baltimore County); *Murray v. TransCare Md., Inc.,* 203 Md.App. 172, 37 A.3d 987 (2012) (affirming transfer from Baltimore City to Talbot County of medical malpractice claim against parent and subsidiary corporations, having principal place of business in Baltimore County, where plaintiffs resided in Talbot County, the place of the allegedly tortious medical treatment), *cert. granted,* 426 Md. 427, 44 A.3d 421 (2012); *Nace v. Miller,* 201 Md.App. 54, 28 A.3d 737 (2011) (affirming transfer from Montgomery County back to Prince George's County, the original forum, of legal malpractice claim against Montgomery County attorney who, as guardian of the property of the infant plaintiff, a Prince George's County resident, failed to insure a building in Prince George's County owned by the ward that was destroyed by fire), *cert. denied,* 424 Md. 56, 33 A.3d 982 (2011); *Thompson v. State Farm Mut. Auto. Ins. Co.,* 196 Md.App. 235, 9 A.3d 112 (2010) (affirming transfer from Baltimore City to Anne Arundel County of claim on uninsured/underinsured motorist coverage where plaintiff resided in Anne Arundel County, the situs of the accident and of treatment for injuries); *Payton–Henderson v. Evans,* 180 Md.App. 267, 949 A.2d 654 (2008) (affirming transfer from Baltimore City to Baltimore County of claim by a student at Randallstown High School in Baltimore County, who was shot there, alleging negligence against principal, Board of Education, Baltimore County, its police department, and a police officer, and joining the two shooters, both of whom were in prison but one of whom resided in Baltimore City at the time of the shooting); *Smith v. State Farm Mut. Auto. Ins. Co.,* 169 Md.App. 286, 900 A.2d 301 (2006) (affirming transfer from Baltimore City to Montgomery County of claim on uninsured/underinsured motorist coverage by Montgomery County insured where situs of the accident and treatment was Montgomery County); *Stid-*

*ham v. Morris,* 161 Md.App. 562, 870 A.2d 1285 (2005) (affirming transfer from Prince George's County to Baltimore County of motor tort claim against Pennsylvania residents where plaintiff resided in Baltimore County, the situs of the accident and treatment); *Cobrand v. Adventist Healthcare, Inc.,* 149 Md.App. 431, 816 A.2d 117 (2003) (affirming transfer from Prince George's County to Montgomery County of claim on behalf of infant plaintiff, who resided, alternately, with father in Prince George's County and mother in Montgomery County, asserting medical malpractice in Montgomery County, where defendant corporation had its principal office, and where, of eighteen prospective witnesses from defendant's staff, eight resided in Montgomery County and only one in Prince George's County).

Here, unlike the cases reviewed above, the appellants assert liability on the part of two defendants, who are independent of each other, based on their separate, allegedly negligent conduct, taking place at different times but causing a single harm. If Hopkins alone were sued on the facts alleged as to it, Baltimore City would clearly be a convenient forum. If Dr. Hawit alone were sued on the facts alleged as to him, Calvert County would clearly be a convenient forum. We now turn to how the parties and the court below addressed the mix of the two.

We begin our analysis with the explanation, given by the Court of Appeals in *Leung v. Nunes,* 354 Md. 217, 729 A.2d 956 (1999), of the burden on the party seeking transfer under Rule 2–327(c).

"Proper regard for the plaintiff's choice of forum is the reason why 'a motion to transfer [from the forum chosen by the plaintiff] should be granted only when the balance weighs strongly in favor of the moving party.' *Urquhart v. Simmons,* 339 Md. 1, 18 n. 7, 660 A.2d 412, 420 n. 7 (1995) (citing *Odenton,* 320 Md. at 40, 575 A.2d at 1238). Commentators on Rule 2–327(c) have recognized that 'due consideration must ... be given to the plaintiff's selection of forum, and this selection will not be altered solely because it is more convenient for the moving party to be in another

forum.' P.V. Niemeyer & L.M. Schuett, *Maryland Rules Commentary* 215–16 (2d ed. 1992) (Niemeyer & Schuett)".

"This respect for the plaintiff's choice of forum is derived largely from federal law developed under Title 28 U.S.C. § 1404(a).[ ] *See Urquhart,* 339 Md. at 10, 660 A.2d at 416; Niemeyer & Schuett at 215. *See also Doe v. Connors,* 796 F.Supp. 214, 221 (W.D.Va.1992) ('[T]he plaintiff has the primary right to choose his forum and that selection is not to be easily overthrown.'); M. Moore, *Federal Practice* § 111.13[1][c][i], at 111–67 (Mathew [*sic*] Bender 3d ed. 1997) (Moore) ('As a general rule, the plaintiff's choice of forum is given significant weight....'); Annotation, *Questions as to Convenience and Justice of Transfer Under Forum Non Conveniens Provision of Judicial Code (28 U.S.C. § 1404(a)),* 1 A.L.R. Fed. 15, 49–50 (1969) ('Unless the balance of convenience is strongly in favor of the defendant, or such balance weighs heavily in favor of the defendant, the plaintiff's choice of forum should not, or should rarely, be disturbed.'). The plaintiff's choice, however, is not an absolute and uncontrolled privilege that is determinative under present *forum non conveniens* law. 1 A.L.R. Fed. at 51."

354 Md. at 224–25, 729 A.2d at 959–60.

Dr. Hawit argued that the case against Hopkins related to "one emergency room visit soon after the child was born." When the court pointed out, based on pre-hearing memoranda, that the appellants claimed that Charlie "received extensive treatment at a number of locations in Baltimore, including Mount Washington Pediatric [and] Johns Hopkins," Dr. Hawit replied that the "primary pediatric care" was provided in Calvert County. Dr. Hawit contended that witnesses whose testimony would be relevant to damages "have no relationship whatsoever to the alleged malpractice[.]" He also submitted that testimony concerning damages would likely be submitted via video-taped depositions, so that travel by those witnesses to Calvert County would not be required. He emphasized that all of the party witnesses were residents of Calvert County, with the exception of Hopkins, where he said there

was "a one-time visit." Looking to the interests of justice prong of Rule 2–327, the Calvert County appellee said that the people of Baltimore City had no interest in medical care in Calvert County and that that jurisdiction and its jurors should not be subjected to a jury trial of this case.

Hopkins opened its argument by contending that, because the case involved a "foreign" plaintiff who did not reside in Baltimore City, the plaintiffs' choice of forum "is automatically given less deference" than if they had chosen Calvert County. Secondly, Hopkins submitted that there were fifteen or sixteen visits alleged in the complaint as giving rise to the claim against Dr. Hawit, whereas there was but one visit of several hours to Hopkins. Thirdly, counsel for Hopkins represented that there were "thousands of pages of records that detail care provided in Calvert County" whereas "the care provided by Johns Hopkins can be limited to the stack of ten pages." Further, Hopkins identified by name five physicians and a physician's assistant who had treated Charlie in Calvert County over the past nine years "in the same way that the plaintiff may ... receive some treatment here in Baltimore City." Finally, as noted above, Hopkins expressed a willingness to appear in Calvert County and to produce there the three persons (including one from Tennessee) on whose alleged negligence the claim against Hopkins rested.

In their memorandum to the circuit court, the plaintiffs identified an additional eighteen physicians, by name and speciality, whom they represented to the court had treated Charlie in Baltimore City over the eleven years since his birth.[5] At oral argument, counsel for the plaintiffs basically contended that each of the defendants' arguments worked in both directions. The factors based on the claim against Dr. Hawit favored Calvert County but, when those factors were applied to the claim against Hopkins, they were said to weigh in favor of Baltimore City. The result, the plaintiffs submitted,

---

5. At oral argument in this Court, Hopkins said that Charlie's medical records reflect that there were twenty-seven health care provider witnesses in Calvert County.

was essentially an equipoise, so that the balance of convenience could not be said to weigh strongly against the plaintiffs' choice of forum.

The court ruled that the factors weighed strongly in favor of Calvert County because (1) the plaintiffs did not reside in Baltimore City, (2) the "majority of the care that allegedly led to the injuries" occurred in Calvert County, and (3) Hopkins was willing to accept the transfer.

In this Court, a principal argument by Hopkins is that appellants' interest in selecting an available venue is diminished because the plaintiffs are foreign to Baltimore City. Hopkins cites *King v. Johnson Wax Assocs., Inc.*, 565 F.Supp. 711 (D.Md.1983) (Northrop, J.), where the court said: "Although the 'venue privilege' is much cited by the courts, in the opinion of this judge such a privilege loses most, if not all, of its force when the plaintiff has sued in a foreign jurisdiction." *Id.* at 721. *King* was a purported class action, antitrust claim in which two of the named plaintiffs were from Alabama and one was from California, where the defendants had many contacts. The principal contact with Maryland seems to have been a dealer-witness for the plaintiff whose territory was Maryland, the District of Columbia, and northern Virginia.

In support of his observation in *King,* Judge Northrop cited, as does Hopkins, *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255–56, 102 S.Ct. 252, 266, 70 L.Ed.2d 419, 436 (1981), where, applying 28 U.S.C. § 1404(a), the Court said:

> "When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference."

(Footnote omitted).

Before relegating a plaintiff's choice of forum to "little weight," this Court first considers whether the choice is of a forum that has "no meaningful ties" to the controversy. In

*Stidham v. Morris,* 161 Md.App. 562, 569, 870 A.2d 1285, 1290 (2005), we said:

"We therefore conclude that, because [plaintiff] is a resident of the transferee jurisdiction, Baltimore County, his choice of Prince George's County, which 'has no meaningful ties to the controversy and no particular interest in the parties or subject matter,' is entitled to little deference and thus little weight when the factors for and against transfer are weighed. Offsetting whatever minimal weight is attributable to appellant's choice, under the circumstances of this case, is the fact that, in addition to being appellant's residence, Baltimore County is the place where the accident occurred."

Those are not the facts here. In this case there is a meaningful connection to Baltimore City. It is the situs of one of the alleged torts said to produce the infant plaintiff's ultimate harm and it is the situs of the principal place of business of one of the tortfeasors.

■■■ A further reason why the transferor court ordered transfer was because "allegations of negligent care weigh more heavily on Dr. Hawit's care and the length both in duration and number of times that he saw the minor plaintiff." From the standpoint of the Maryland law of apportionment of liability and of compensation for harm, this reason is irrelevant. The plaintiffs do not claim that Dr. Hawit willfully injured the child, or that either his negligence, or that of Hopkins, was other than ordinary. Nor are we concerned about which alleged tortfeasor's negligence contributed more to the ultimate harm, or what the defendants' relative percentages of contribution might be to the ultimate harm. Maryland law, as of this writing, does not recognize comparative negligence.

It appears that the transferor court was diverted by the fact that the complaint narrates Charlie's medical care during the period of approximately three months following his birth, during which the alleged misdiagnoses occurred, and the complaint narrates that Dr. Hawit saw the infant many more

times during that period than did the agents of Hopkins. If the plaintiffs can prove that misdiagnoses by each of the defendants substantially caused the ultimate harm, then it is immaterial that Charlie was seen at Hopkins on only one occasion in the period apparently relevant to liability when, allegedly, a proper diagnosis and treatment conforming to the standard of care, by Hopkins, would have avoided the harm that actually occurred. If the plaintiffs can prove substantial legal causation as to each defendant, the result is joint and several liability for the total harm. *See Owens–Illinois, Inc. v. Armstrong*, 326 Md. 107, 119, 604 A.2d 47, 52–53 (1992); *Bartholomee v. Casey*, 103 Md.App. 34, 56, 651 A.2d 908, 918 (1994); Restatement (Second) of Torts § 431 (1965).

On the other hand, if the standard for applying *forum non conveniens* is the estimated trial time to be devoted to each of two independent defendants who may be jointly and severally liable, then there is no basis for assuming that the plaintiffs will devote the majority of their presentation to a detailed review of the visits and telephone calls to Dr. Hawit. The deeper pocket is Hopkins, to whom the plaintiffs looked, with at least the concurrence of Dr. Hawit, for expert advice that would be more experienced from the standpoint of the variety of challenging cases seen. At the complaint stage of the action, we cannot say that the plaintiffs' trial strategy will be to emphasize the liability of Dr. Hawit over that of Hopkins.

The factor of convenience to the witnesses is not limited to those witnesses testifying as to liability. Based upon the representations of the parties, there is a substantial number of potential witnesses who work either in Baltimore City or in Calvert County who can testify to aspects of the treatment of the infant plaintiff over the years.

Another consideration under Rule 2–327(c) is the public interest, which factors in court congestion. Although not presented to the circuit court, Hopkins has included in the Appendix to its brief to us, from the Annual Statistical Abstract of the Administrative Office of the Courts for fiscal year 2011 (ending June 30, 2011), filings and terminations of cases

in the Circuit Courts for Calvert County and Baltimore City. In Calvert County there were 4,755 filings and 5,073 terminations of cases of all types, while in Baltimore City there were 52,477 filings and 58,501 terminations. Hopkins also includes exclusively civil cases, for which the filings in Calvert County were 684 and in Baltimore City were 13,883 and for which there were nineteen trials in Calvert County and 1,643 trials in Baltimore City. There were, however, for that period, only two judges resident in Calvert County, whose per judge statistical caseloads were 2,378 filings and 2,537 terminations of all types, whereas there were thirty-three judges resident in Baltimore City, whose per judge caseloads were 1,590 filings and 1,773 terminations. Thus, the filings per resident judge in Calvert County were 1.49 times heavier than the filings per resident judge in Baltimore City. We do not imply that the quotient of filings per resident judge is the exclusive test of public interest for *forum non conveniens* purposes. The point is simply that statistics can be used to demonstrate different conclusions and, in the present case, we conclude that court congestion does not point toward Calvert County as the convenient forum.

■ We review. The situs of the alleged torts is Baltimore City as to Hopkins and is Calvert County as to Dr. Hawit. The principal place of business of the defendant, Hopkins, is Baltimore City and the residence of the defendant, Dr. Hawit, is Calvert County. The treatment for the harm allegedly resulting from the two torts has been, and is being, rendered in Baltimore City and in Calvert County. Not only do the medical witnesses as to treatment work in Baltimore City and in Calvert County, but the plaintiffs have been traveling from Calvert County to Baltimore City for treatment for eleven years. The witnesses as to liability are, or were, employed in Baltimore City as to Hopkins and in Calvert County as to Dr. Hawit. Baltimore City, and its jurors, have an interest in the quality of medical care rendered there, just as Calvert County, and its jurors, have an interest in the quality of medical care rendered there. The factor of court congestion is a standoff. The only factor pointing solely toward Calvert County is the

residence of the plaintiffs, which results in attributing less weight to their choice of Baltimore City than if they had sued in Calvert County.

> "Proper regard for the plaintiff's choice of forum is the reason why 'a motion to transfer [from the forum chosen by the plaintiff] should be granted only when the balance weighs strongly in favor of the moving party.' *Urquhart v. Simmons*, 339 Md. 1, 18, n. 7, 660 A.2d 412, 420 n. 7 (1995) (citing *Odenton*, 320 Md. at 40, 575 A.2d at 1238)."

*Leung*, 354 Md. at 224, 729 A.2d at 959. We hold that, under the facts of this case, the reduced weight to be given to the plaintiffs' choice of a foreign forum is insufficient to support a finding that the "balance weighs strongly in favor of" Calvert County. The factors weigh in near equipoise.

█ It appears that the circuit court was influenced in transferring the action by Hopkins's agreement to accept the inconvenience to it in trying the case in Calvert County and its agreement that it would produce its liability witnesses there. By accepting that agreement the circuit court, in a sense, allowed Hopkins to put its thumb on the scale in favor of Calvert County. Allowing Hopkins to waive the inconvenience of leaving the jurisdiction of its principal place of business in effect treated Hopkins as a resident of Calvert County with Dr. Hawit. Instead of weighing the factors under the actual facts, the transferor court allowed Hopkins to eviscerate the indicia of convenience to it that pointed to Baltimore City in this two-defendant case and to overload the balance in favor of Calvert County. This was an abuse of discretion.

When one eliminates from consideration Hopkins's waiver of facts favorable to the plaintiffs' statutorily conferred choice of venue, the case remains one of near equipoise, so that the transfer was error.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS IN THAT COURT.**

**COSTS TO BE PAID IN EQUAL SHARES BY THE APPELLEES.**